**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
---------------------------------------------------
SHIVA STEIN,                            :
                                        :
              Plaintiff,                :   Civil Action No. 1:21-cv-10325
                                        :
v.                                      :
                                        :   COMPLAINT FOR VIOLATIONS OF
ROGERS CORPORATION, BRUCE D.            :   SECTIONS 14(a) AND 20(a) OF THE
HOECHNER, KEITH L. BARNES, MEGAN        :   SECURITIES EXCHANGE ACT OF
FAUST, CAROL R. JENSEN, KEITH           :   1934
LARSON, GANESH MOORTHY, JEFFREY         :
J. OWENS, HELENE SIMONET, and PETER     :   JURY TRIAL DEMANDED
C. WALLACE,                             :
                                        :
              Defendants.               :
---------------------------------------------------
```

Shiva Stein ("Plaintiff"), by and through her attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1.     This is an action brought by Plaintiff against Rogers Corporation ("Rogers or the "Company") and the members Rogers board of directors (the "Board" or the "Individual Defendants" and collectively with the Company, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), in connection with the proposed acquisition of Rogers by affiliates of DuPont de Nemours, Inc. ("DuPont").

2.     Defendants have violated the above-referenced Sections of the Exchange Act by causing a materially incomplete and misleading Preliminary Proxy Statement on Schedule 14A (the "Proxy Statement") to be filed on December 1, 2021 with the United States Securities and Exchange Commission ("SEC") and disseminated to Company stockholders.  The Proxy

Statement recommends that Company stockholders vote in favor of a proposed transaction whereby Cardinalis Merger Sub, Inc. ("Merger Sub"), a wholly owned subsidiary of DuPont, will merge with and into Rogers with Rogers surviving the merger and becoming a wholly owned subsidiary of DuPont (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into (the "Merger Agreement") each Rogers common share issued and outstanding will be converted into the right to receive $277.00 in cash (the "Merger Consideration").

3.      As discussed below, Defendants have asked Rogers stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Proxy Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act.  Specifically, the Proxy Statement contains materially incomplete and misleading information concerning the Company's financial forecasts and financial analyses conducted by the financial advisors of the Company, J.P. Morgan Securities LLC ("J.P. Morgan") in support of its fairness opinion, and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

4.      It is imperative that the material information that has been omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5.      For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Rogers stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

**JURISDICTION AND VENUE**

6.      This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7.      Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

8.      Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because the Company's stock is traded on the New York Stock Exchange, headquartered in this District, and the closing of the Proposed Transaction will take place in the New York offices of the Company's legal advisor, Skadden, Arps, Slate, Meagher & Flom LLP, located in this District.

**PARTIES**

9.      Plaintiff is, and has been at all relevant times, the owner of Rogers common stock and has held such stock since prior to the wrongs complained of herein.

10.     Individual Defendant Bruce D. Hoechner has served as a member of the Board since October 2011 and is the Company's President and Chief Executive Officer.

11.     Individual Defendant Keith L. Barnes has served as a member of the Board since October 2015.

12.     Individual Defendant Megan Faust has served as a member of the Board since December 2020.

13.     Individual Defendant Carol R. Jensen has served as a member of the Board since February 2006.

14.     Individual Defendant Keith Larson has served as a member of the Board since December 2020.

15.     Individual Defendant Ganesh Moorthy has served as a member of the Board since July 2013.

16.     Individual Defendant Jeffrey J. Owens has served as a member of the Board since August 2017.

17.     Individual Defendant Helene Simonet has served as a member of the Board since October 2014.

18.     Individual Defendant Peter C. Wallace has served as a member of the Board since June 2010 and is the Chairman of the Board.

19.     Defendant Rogers is incorporated in Massachusetts and maintains its principal offices at 2225 W. Chandler Blvd., Chandler, AZ 85224.  The Company's common stock trades on the New York Stock Exchange under the symbol "ROG."

20.     The defendants identified in paragraphs 10-18 are collectively referred to as the "Individual Defendants" or the "Board."

21.     The defendants identified in paragraphs 10-19 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

A.     **The Proposed Transaction**

22.     Rogers designs, develops, manufactures, and sells engineered materials and components worldwide. It operates in Advanced Connectivity Solutions (ACS), Elastomeric Material Solutions (EMS), Power Electronics Solutions (PES), and Other segments. The ACS

segment offers circuit materials and solutions for connectivity applications in wireless infrastructure, automotive, aerospace and defense, connected devices, and wired infrastructure under the RO4000, RO3000, RT/duroid, TMM, AD Series, CuClad, Kappa, DiClad, IsoClad, COOLSPAN, MAGTREX, TC Series, IM Series, 92ML, and CLTE Series names. The EMS segment provides engineered material solutions, including polyurethane and silicone materials used in cushioning, gasketing, sealing, and vibration management applications for general industrial, portable electronics, automotive, mass transit, aerospace and defense, footwear and impact mitigation, and printing markets; customized silicones used in flex heater and semiconductor thermal applications; and polytetrafluoroethylene and ultra-high molecular weight polyethylene materials used in wire and cable, electrical insulation, and automotive applications under the PORON, BISCO, DeWAL, ARLON, Griswold, eSORBA, XRD, HeatSORB, and R/bak names. The PES segment offers ceramic substrate materials, busbars, and cooling solutions under the curamik and ROLINX names. The Other segment provides elastomer components; and elastomer floats for level sensing in fuel tanks, motors, and storage tanks for applications in the general industrial and automotive markets under the ENDUR and NITROPHYL names. Rogers was founded in 1832 and is headquartered in Chandler, Arizona.

23.     On November 2, 2021, Rogers announced that it had entered into the Proposed Transaction:

> CHANDLER, Ariz.--(BUSINESS WIRE)--Rogers Corporation (NYSE:ROG) announced today that it has entered into a definitive merger agreement to be acquired by DuPont (NYSE: DD) in an all-cash transaction that values Rogers at approximately $5.2 billion.
>
> The transaction delivers substantial value to Rogers' shareholders, who will receive $277 in cash per share, representing a 33% premium over Rogers' closing share price on November 1, 2021, and a 46% premium to the 1-month volume weighted average share price.

Following the closing of the transaction, Rogers will be integrated into DuPont's Electronics & Industrial business unit. Rogers significant applications engineering, design expertise, and deep customer relationships form a strong strategic fit with DuPont's innovation capabilities and collaborative approach to solving the most complex customer challenges.

"Rogers is a recognized global leader in advanced materials solutions, and this combination with DuPont will help accelerate our long-term growth in EV/HEV, ADAS and other key markets," stated Bruce D. Hoechner, Rogers' President and CEO. "The Rogers' team has created a growth-focused organization built on a foundation of strong technology leadership and customer intimacy. Our combination with DuPont, a proven leader in technology-based materials, provides resources and support to allow Rogers to scale for success. Rogers is a natural fit with DuPont, and this combination will create an exciting next chapter for Rogers' customers, employees and partners."

"Rogers is a results-driven organization with excellent technical expertise and deep customer relationships that align well with DuPont's leading innovation and applied material science capabilities," said Ed Breen, DuPont Executive Chairman and CEO. "The combination of Rogers with our Electronics & Industrial business further strengthens our market-leading portfolio and ability to bring new solutions to exciting end markets. We look forward to welcoming Rogers' employees and working together to deliver essential innovations that help our customers and company grow."

**<u>Transaction Details</u>**

The Board of Directors of Rogers has unanimously approved the agreement with DuPont and recommends that the Rogers' shareholders vote in favor of the transaction at the Special Meeting of Shareholders to be called in connection with the transaction.

The transaction is expected to close in the second quarter of 2022, subject to customary closing conditions, including approval by Rogers' shareholders and receipt of regulatory approvals.

J.P. Morgan Securities LLC served as exclusive financial advisor to Rogers on the transaction; Covington & Burling LLP and Hinckley, Allen & Snyder LLP served as outside legal counsel.

* * *

24.     The Board has unanimously approved the Proposed Transaction. It is therefore imperative that Rogers's stockholders are provided with the material information that has been omitted from the Proxy Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

**B.     The Materially Incomplete and Misleading Proxy Statement**

25.     On December 1, 2021, Rogers filed the Proxy Statement with the SEC in connection with the Proposed Transaction.  The Proxy Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction.  The Individual Defendants were obligated to carefully review the Proxy Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions.  However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning Rogers Financial Projections*

26.     The Proxy Statement fails to provide material information concerning financial projections by Rogers management and relied upon by J.P. Morgan in its analysis. The Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading. The Proxy Statement indicates that in connection with the rendering of its fairness opinion, that the Company prepared certain non-public financial forecasts (the "Company Projections") and provided them to the Board and the financial advisors with forming a view about the stand-alone valuation of the Company. Accordingly, the Proxy Statement should have, but fails

to provide, certain information in the projections that Rogers management provided to the Board and the financial advisors. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

27.    For the Company Projections, the Proxy Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics: Adjusted EBITDA and Free Cash Flow, and Unlevered Free Cash Flows but fails to provide line items used to calculate these metrics and/or a reconciliation of these non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

28.    When a company discloses non-GAAP financial measures in a Proxy Statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

29.    The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its

usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.[1]

30.     Thus, to cure the Proxy Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Proxy Statement, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures to make the non-GAAP metrics included in the Proxy Statement not misleading.

*Omissions and/or Material Misrepresentations Concerning J.P. Morgan's Financial Analysis*

31.     With respect to J.P. Morgan's *Public Trading Multiples* analysis, the Proxy Statement fails to disclose the metrics and multiples for the companies selected by J.P. Morgan in the analysis.

32.     With respect to J.P. Morgan's *Selected Transaction Analysis*, the Proxy Statement fails to disclose the metrics and multiples for the transactions selected by J.P. Morgan in the analysis.

33.     With respect to J.P. Morgan's *Discounted Cash Flow Analysis* for the Company, the Proxy Statement also fails to disclose: (i) the range of terminal asset values for the Company; (ii) the inputs and assumptions underlying the use of perpetual growth rates of 4.0% to 5.0%; (iii) the inputs and assumptions underlying the range of discount rates ranging from 9.0% to 10.5%; and (iv) the weighted average cost of capital of the Company.

34.     In sum, the omission of the above-referenced information renders statements in the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act.

---

[1] U.S. Securities and Exchange Commission, Non-GAAP Financial Measures, last updated April 4, 2018, available at: https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm

Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and she is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

35.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

36.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading."  17 C.F.R. § 240.14a-9.

37.     Defendants have issued the Proxy Statement with the intention of soliciting stockholder support for the Proposed Transaction.   Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement and the use of their name in the Proxy Statement, which fails to provide critical information regarding, among other things, financial analysis that were prepared by J.P. Morgan and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

38.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed

to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

39.     Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement. The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully. Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives and the Company's financial projections.

40.     The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

### **COUNT II**

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

41.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

42.     The Individual Defendants acted as controlling persons of Rogers within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as

directors of Rogers, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Rogers, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

43.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

44.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Rogers, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.  The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction.  The Proxy Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction.  The Individual Defendants were thus directly involved in the making of the Proxy Statement.

45.     In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered.   The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

46.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

47.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

48.     Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

<h3 style="text-align:center">RELIEF REQUESTED</h3>

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants jointly and severally, as follows:

A.      Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy Statement;

B.      Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C.      Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D.      Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E.      Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: December 3, 2021

**MELWANI & CHAN LLP**

By:   /s *Gloria Kui Melwani*
      Gloria Kui Melwani (GM5661)
      1180 Avenue of Americas, 8th Fl.
      New York, NY 10036
      Telephone: (212) 382-4620
      Email: gloria@melwanichan.com

      *Attorneys for Plaintiff*